JAY WILSON v. ALBERT G. MARSH, ALONZO B. BIRD AND
SAMUEL H. HIBBARD.

### Duties and Liabilities of Listers.

While in relation to most of the duties of listers, they involve so much of matter of judgment and discretion, and partake so much of the nature and character of judicial proceedings, that their judgment, exercised in good faith, and without malice, is conclusive in their favor, yet in relation to setting real estate in the list to the owners or the persons liable to pay taxes thereon, so far as relates to the persons to whom the land is to be set and the number of acres, the listers are bound to act in good faith, and with common care, skill and prudence, and if they so act they are not liable for mistakes or inaccuracies ; but if not, they are liable to the party injured for the consequences of such mistakes, oversights or inaccuracies.

The statute requiring the listers to make an appraisal of real estate once in five years, was obviously intended to give a degree of permanency to the list for that period, with such intermediate changes as the changes of ownership or occupancy, or the erection or destruction of buildings may require, and the listers between the years of such appraisal have a right to rely on it as correctly made up, and to make it the basis of a new list, and they cannot be charged with negligence for not discovering and correcting errors arising from events subsequent to the making of such list, unless they are of such an extent and character and so obvious as to be equivalent to notice.

CASE.—The declaration set forth that the defendants were listers of the town of Bethel for the year 1857, and that as such listers they illegally set certain parcels of land to the plaintiff as the owner or possessor, and thereby compelled him to pay taxes thereon.   Plea, not guilty, and trial by jury, at the December term, 1860, BARRETT J., presiding.

The plaintiff claimed to recover of the defendants for taxes paid by him as an inhabitant of the town of Bethel upon the list of 1857, upon the following pieces of real estate which were set in the list of that year by the defendants as listers of said town, as follows :

1—Hiram Wilson land, 12 acres, appraised at $226.

2—Ellison land, 6 acres, appraised at $339.

3—Saw mill, appraised at $222.

4—Washburn shed, appraised at $56.

5—Sanders place, 150 acres, appraised at $2,825.

6—Lillie place, 260 acres, appraised at $3,164.

7—Backbone, 100 acres, appraised at $170.

Wilson v. Marsh et al.

The plaintiff gave in evidence a deed from himself to Orville Bowen, dated January 14, 1850, and recorded the same day, of the twelve acre piece numbered one, and proved that he had had no occupancy, and nothing to do with said land since the making of the conveyance thereof.

It appeared from the evidence that when the listers in 1855 were about making the appraisal of that year, and for the purpose of ascertaining what land should be set in the list and appraised to the plaintiff, one of the then listers, George S. Hatch, examined the town records, and not being able therefrom to get satisfactory information, inquired of the plaintiff, Hatch also having some personal knowledge of the plaintiff's real estate in Bethel. With what the records showed, what Hatch knew, and what was elicited by inquiry, the listers were enabled to make a list of the plaintiff's property, which was satisfactory, the listers supposing that no parcel of property was set in the list that was not directed so to be set by the plaintiff. The listers duly deposited their list of appraisals in the town clerk's office, as required by law, in which was contained this parcel No. 1, " Hiram Wilson land, 12 acres."

The plaintiff also gave in evidence a deed from himself to George Gilson, dated May 9th, 1856, which was recorded the same day, of the six acre piece, numbered 2, and proved that he had had no interest in, or occupancy of, it since the making of the conveyance thereof. In reference to this parcel the defendants proved and the plaintiffs conceded, that it was entered upon the list of appraisals of 1855 by the listers, by the same descriptive name, " Ellison land, 6 acres," by the direction of the plaintiff, when called upon by Hatch as above stated, in respect to parcel No. 1. It was also proved that the deed introduced by the plaintiff from himself to George Gilson, gave no description of the land thereby conveyed, except by referring for a description to another deed, therein described as having been executed by William and Jane Meserve to the plaintiff, and dated February 8, 1855 ; and that no such deed, as that last mentioned, could be found upon the records of the town clerk's office ; but there was such a deed on record dated February 8, 1854 ; that the said six acres were part of a farm of about ninety-eight acres, formerly

24

owned by Nelson Ellison ; that Ellison, April 1, 1853, sold to William Meserve all of said farm except forty acres ; that Meserve afterwards conveyed to the plaintiff the land thus bought by him of Ellison ; that the plaintiff afterwards sold all of the same land, except the meadow, to George Gilson ; that afterwards, by another deed, he sold to Gilson eight acres off the lower end of the meadow, which left the six acres above mentioned, which the plaintiff claimed were conveyed by the deed of May 9, 1856, above mentioned ; that the grantee, Gilson, upon the last named conveyance, went into immediate possession, and by himself and his grantees had been in possession ever since.

The plaintiff also gave in evidence a decree of the court of chancery of Windsor county, in favor of Job Sanders, against himself, for the foreclosure of a mortgage of the saw mill, numbered three, under which the equity of redemption expired April 1, 1856, and also gave in evidence a deed of said Sanders to James J. Wilson, dated April 3, 1856, recorded the same day, conveying said saw mill premises covered by said decree, and proved that the Washburn shed, numbered four, was situatednear to the saw mill, in front of and separated from it by a side road ; that the shed was built for the use and convenience of the saw mill, and had always been used for that purpose, and that he always regarded the same as parcel of the saw mill premises, and as embraced in said mortgage and decree, and in the deed of Sanders to J. J. Wilson, and that he had had no interest in, or possession or occupancy of the saw mill, or shed, since the expiration of the equity of redemption.

Upon the construction of this deed in connection with the facts, the court held that the shed was embraced in the mortgage, and passed under the decree ; to which decision the defendants excepted.

The defendants proved that the plaintiff, in giving in his list for appraisal in 1855, which was the year of the appraisal of real estate by the listers, gave in the saw mill and the shed separately, and as distinct parcels, and they were set in the list as thus given in.

The plaintiff also gave in evidence a mortgage deed from himself to Leonard R. Sanders, dated August 9, 1855, which cov-

ered piece numbered five, and which was on the 9th day of August, 1855, assigned to Job Sanders. Said mortgage deed bore date August 9, 1855, and was given for the purchase money, the same farm having been sold and conveyed by Leonard R. Sanders to the plaintiff the same day ; and at the time of the transfer Job Sanders held a mortgage for $2,000 on the same place, given him by L. R. Sanders before said conveyance to the plaintiff, upon which there was interest due in 1856, which has remained due ever since.

And the plaintiff also gave in evidence a petition entered in the court of chancery of Windsor county, at the December term, 1855, in favor of Job Sanders against Jay Wilson, for the foreclosure of said mortgage, upon which petition a final decree was made by the court at its May term, 1860, which was pending by appeal in the supreme court at the time of this trial.

It was proved that the plaintiff, at the time he took the conveyance of said premises, leased them to said L. R. Sanders till April 1, 1856 ; that the lease was assigned to Job Sanders, who, in October, 1855, went into possession of the premises under the lease; that Job Sanders had continued in the possession and occupancy of them ever since ; that there was something due and unpaid on the mortgage on said premises when Sanders went into possession thereof, in breach of the condition of said mortgage, and that something had remained due and unpaid upon said mortgage and in breach of the condition thereof, ever since.

It appeared that the parcel numbered five was entered upon the list of 1856 by the listers of that year, as the property of the plaintiff ; and it did not appear that the defendants, at the time of making the list of 1857, had any knowledge in fact of the mortgage to Sanders, or of the pendency of the petition for foreclosure, or that Job Sanders was, or claimed to be, in possession under said mortgage. It appeared that at the time of making the list of 1857, Sanders did not live upon the farm, but resided upon an adjoining farm, about eighty rods from said Sanders' place.

The plaintiff also proved that on the 17th day of September, 1853, he purchased and took conveyance of the Lillie place, numbered six, and on the same day gave a mortgage thereof to George S. Hatch to secure the payment of $2,000 in eight years,

with interest annually, and a subsequent mortgage to Simon Brockway to secure the payment of $700, in ten years, with interest annually ; that on the occasion of executing the last named mortgage, he executed to Brockway a lease of the premises for the term of seven years, conditioned that if the plaintiff should pay the interest to Hatch on the $2,000 annually, and all costs that should be incurred in consequence of neglecting so to do, then said lease should be void ; and providing that if the plaintiff should pay the interest to Hatch as aforesaid, then he should have the full possession of the demised premises and the profits thereof, for such years as he should pay the interest, but if he should fail to pay the interest and costs as aforesaid any one year, then for such year Brockway should have the possession of the premises under the lease.

It was also proved that in March, 1856, Brockway sold and assigned to William and Walter Rogers said note and mortgage, and also the lease ; that they, on the 12th day of July, 1856, took possession of said premises under the lease, in consequence of the failure of Wilson to pay the interest to Hatch as aforesaid ; that they continued to hold such possession under said lease till the last day of March, 1859, at which time the plaintiff having paid the interest to Hatch which was due at that time, resumed possession of the premises ; and that at the time Rogers took possession interest was due and unpaid on the Brockway mortgage, in breach of the condition thereof, and also on the mortgage to Hatch, and so continued to be due during all the time they held possession.

The defendants proved, that the plaintiff, in giving in his list of parcels of real estate, in 1855, gave in parcel No. 6, by the descriptive name of the " Charles Lillie place, 260 acres," and that it was accordingly so entered by the listers upon the list of appraisals of that year. It did not appear that the defendants, at the time of making the list of 1857, had any knowledge in fact of the mortgage to Hatch, or of the mortgage to Brockway, or of the possession of the premises by the two Rogers, though their possession was open, notorious and exclusive.

As to No. 7, the plaintiff proved that, some time prior to the year 1855, he purchased and took conveyance from George Bar-

rett. of a portion of what was known as the Bryant Brown farm, which parcel thus conveyed, was in the deed described, and said to " *contain one hundred acres more or less* ;" that in fact it contained only about sixty acres ; that that parcel was all the plaintiff ever owned of said Brown farm ; that the defendants set in the list of 1857 to the plaintiff, a parcel of said Brown farm as follows : " Barrett lot, fifty acres, appraised at one hundred and thirteen dollars ;" and also set in said list of 1857 to the plaintiff, parcel of said Brown farm, as follows : " Back Bone, one hundred acres, appraised at one hundred and seventy dollars." It appeared that, in the enquiry made of the plaintiff by Hatch, as stated above in respect to parcel No. 1, from what passed between the plaintiff and Hatch on that occasion, in connection with what Hatch had found on the records, and his own knowledge as to the plaintiff's real estate, Hatch understood that two parcels of the Bryant Brown farm were to be set to the plaintiff, one by the designation of the " Barrett lot," the other by the designation of the " Back Bone," and accordingly they' were so set, in good faith, in the list of appraisals ; but in so doing, Hatch was in error, in supposing that said terms of designation indicated, and applied to, distinct parcels, the appellation being in fact used indiscriminately to designate the same single parcel, and not two distinct parcels.

The plaintiff proved that on all the aforesaid parcels of real estate, thus set in the list of 1857, there was assessed against him the town tax for said year of forty cents on the dollar, highway tax of eighteen cents on the dollar, state tax of sixteen cents on the dollar, and state school tax of eight cents on the dollar, and that therefor tax bills were duly made out and placed in the hands of the collector of said town of Bethel for said year, and the same were collected by and paid to said collector in due course by the plaintiff. It was also proved that the plaintiff paid the taxes without objection or protest.

It was also proved that all of the parcels, except the Sanders place, were set in the list of appraisal of 1855, in the same manner and with the same appraisal as in the list of 1857.

There was no record of any of the aforesaid decrees in the town records of Bethel in April, 1857, and the town clerk fur-

nished to the listers, April 1, 1857, a certificate, purporting to be a list of all transfers of real estate appearing of record in his office to have been made between the first day of April, 1856, and the first day of April, 1857,—which was produced and given in evidence,—in which none of the aforesaid pieces of real estate were embraced, and all transfers so noted were entered upon the list by the defendants.

The defendants, as listers, did not examine the records of the town to ascertain in whom was the title to any real estate in town ; nor did they make any inquiry of the occupants whom they found in possession, when taking the list, as to the owner of any of the real estate in said town.

It was also proved, that the plaintiff did not give any notice to the listers in relation to any of said pieces of real estate, that he was not the owner or possessor.

There was no evidence or claim, that the defendants, as such listers, acted in any bad faith in thus setting said real estate in the list of 1857 to the plaintiff, or were wanting in ordinary care or prudence, except so far as it may have been their duty as listers to resort to and act upon information other than that furnished by the list of appraisals of 1855, and the certificate of transfers, in ascertaining to whom the parcels of real estate should by them be set in the list of 1857.

Upon the evidence and facts thus detailed, the court *pro forma*, ruled that the defendants were liable to the plaintiff for the taxes paid by him upon the aforesaid parcels of real estate, and directed the jury to return a verdict accordingly,—which they did for the sum of sixty-two dollars and three cents, to which the defendants excepted.

*James J. Wilson* and *Converse & French*, for the plaintiff.

*Philander Perrin* and *Washburn & Marsh*, for the defendants.

PECK, J.   The plaintiff claims to recover of the defendants in an action on the case, upon the ground that as listers in the town of Bethel, for the year 1857, the defendants wrongfully set to the plaintiff in his list certain parcels of land for which he was

not liable to be listed, whereby he was wrongfully subjected to taxation on the same.

He proves that the defendants set the parcels of land in his list for that year upon which taxes were assessed against, and paid by him. The court upon these facts and other facts set forth in the bill of exceptions, *pro forma*, directed a verdict for the plaintiff, and the question is, whether *as matter of law*, the defendants upon the facts set forth are liable. This suit involves the question whether the listers in this case committed any errors for which they are liable as matter of law, or for which under the rule of law that governs such cases, the jury would be warranted in finding a verdict against them. Both questions may properly be considered, although, strictly, the first question only is necessary to the determination of the question whether, upon this bill of exceptions the judgment ought to be affirmed or reversed.

We need spend no time in disposing of the question, as to the rule of law that governs the liability of listers ; for while in relation to some of their duties they involve so much of matter of judgment and discretion, and partake so much of the nature and character of judicial proceedings that their judgment exercised in good faith, without malice, is conclusive in their favor ; yet in relation to setting real estate in the list to the owner or persons liable to pay taxes thereon, so far as it relates to the persons to whom it is to be set and the number of acres, it may be regarded as settled that the listers are bound to act in good faith and with common care, skill and prudence, and that if they so act, they are not liable for mistakes or inaccuracies, and if not, that they are liable to the party injured for the consequences of such mistakes, oversights, or inaccuracies.

This was so decided in *Stearns* v. *Miller et al.*, 25 Vt. 20. It is true in that case, (the error consisting in too great a number of acres being set in the list,) the injury complained of arose from an error committed by the listers, the defendants in the action, the year of appraisal when it was their duty to designate the quantity or number of acres, the value, and the owner or person liable to be listed therefor. And it appeared in that case also, that the plaintiff furnished to the listers a statement of

his real estate, containing the number of acres. and the listers for some cause set to him a greater number of acres than such statement contained, and more than he actually owned or was liable to have set in his list. But this cannot vary the rule of law, but leaves its applicaton to be made to ·a different state of facts. But notwithstanding this decision, the question is still left open, what is common care, skill and prudence in each particular case. This is sometimes, upon a given state of facts not in dispute, a question of law; and sometimes a question to be submitted to the jury for them to find under instructions.

In the case at bar, it is stated that " there was no evidence or claim that the defendants as such listers, acted in bad faith in thus setting said real estate in the list of 1857, to the plaintiff, or were wanting in ordinary care or prudence, except so far as it was their duty as listers to have resorted to and acted upon information other than that furnished by the list of appraisals of 1855, and the said certificate of transfers, in ascertaining to whom the said parcels of real estate should by them be set in said list of 1857." It further appears by the case that the town clerk furnished to the listers April 1, 1857, a certificate purporting to be a list of all transfers of real estate appearing of record in his office to have been made between April 1, 1856, and April 1, 1857, and that the defendants duly noticed in making the list all transfers appearing by such certificate to have been made, and it must be taken that the defendants in other respects followed the appraisal of 1855. The only question is. were the defendants bound to look beyond the appraisal of 1855 and the certificate of the town clerk, as this is the only particular in which, the plaintiff claimed the defendants were derelict in their duty there being no claim that the defendants had any knowledge of any errors when they made the list, either in the list they made or in that of 1855, or in the certificate of the town clerk.

As to one class of grievances complained of by the plaintiff, it appears they were errors or alleged errors in the list or appraisal of 1855, and were continued and carried into the list made by the defendants in 1857. As to these the court think the defendants are not responsible. The law requires the listers to make an appraisal once in five years, and on such appraisal the

Wilson *v.* Marsh et al.

listers are required to make a list thereof, and set the number of acres, the amount of the appraisal and the *per centum to such owne.s thereof as are by law liable to pay taxes thereon.* It then provides that in case of transfers of title in the intermediate time between such appraisals, the listers for such intermediate. years shall make corresponding changes in the list. This list of real estate is obviously intended to have a degree of permanency for five years, with such intermediate changes as the change of ownership or occupancy, or the erection or destruction of buildings (which is specially provided for,) may require, and the listers between the years of appraisal have a right to rely on it as correctly made up, and make it the basis of a new list, and if they do so, and are guilty of no fault in making, or omitting to make, such changes as the statute contemplates, arising from subsequent events, they cannot be held liable for errors in such appraisal of which they are ignorant, nor charged with negligence for not discovering and correcting such errors, unless it appears that they are not only such as they have the power to correct, but that they are to such an extent and of such a character, and so obvious as to be equivalent to notice. It is true the statute, sec. 8 of the act of 1855, makes it the duty of the listers each year to set real estate to the owners or occupants, such person as shall be the owner or possessor thereof on the first day of April in each year, but the two statutes must be construed together. We have already seen that listers are not bound at their peril to a literal compliance ; it is a question of care and diligence.

Another grievance complained of is, that the defendants set in the plaintiff's list real estate that he had sold and transferred by deed on record subsequent to the appraisal of 1855, and before April 1, 1857, and which he did not occupy. This transfer, it appears, was not upon the certificate of transfers furnished to the defendants by the town clerk ; and the question is, (to use the language of the exceptions,) were the defendants " wanting in ordinary care and prudence," in not resorting to and acting upon information other than that furnished by the certificate of transfers.

The statute requires the town clerk for the use and benefit of the listers, to prepare and keep a list of all the transfers of real

estate, particularly mentioning in such list the names of the grantor and grantee, the number of acres included in each transfer, etc.

We are not prepared to say that this statute was intended in all cases to be a substitute for the duties required of listers in relation to ascertaining what transfers have been made so as to absolve the listers in all cases from further enquiry, and yet the force we give to it may in many cases have that effect. There may be cases where from a change of occupancy known to the listers together with other circumstances tending to show a change of title, or where the listers are possessed of such other facts as ought to put them on inquiry outside the certificate, it would be their duty to do so. But the town clerk is a public officer required by law to perform this duty, "*for the use and benefit,*" and at least, in aid of the listers : he is the person from his situation, who has the best means of knowledge, especially, as he has this duty before him during the year to keep this list : and can it be regarded as culpable negligence in the listers to rely on his doings in this particular where no facts come to their knowledge to lead them to doubt his accuracy. This certificate would be but little if any aid to the listers, if they are bound at their peril to examine the records, and not only test its accuracy as to what it does show, but also to see that there are no other transfers. When a party is charged with negligence in not knowing a fact, it is competent for him to show that he made inquiry of persons liable to know, and sought information from the proper source. Here the defendants have made such inquiry of a public officer who is not only most likely to know, but whose duty it is to collect, preserve, and furnish the information ; and the court are of opinion that there is nothing in this case which so far puts them on inquiry as to make them liable for acting on the information they received from the clerk through the certificate.

Another complaint is that some of the parcels set in the list of 1857 to the plaintiff, were under mortgage from the plaintiff, and that prior to the first day of April, 1857, the mortgagees had taken possession for condition broken, and were in the occupancy under their mortgages when that list was made, and that such

parcels ought not to have been set to the plaintiff, but to such mortgagees. The statute provides that real estate shall be set to the owner or occupant, and that the mortgagor shall be deemed the owner until the mortgagee takes possess'on, *after which he, the mortgagee, shall be deemed the owner*. This is equivalent to saying that the land shall be set to the mortgagee in possession under his mortgage. To have made the list correct the land in possession of the mortgagees under their mortgages should have been set to such mortgagees and not to the plaintiff. But it is claimed that this is no ground of action for the reason that the plaintiff has lost nothing by the error, inasmuch as he would ultimately have had the taxes to pay, when he redeemed, had the mortgagee paid the taxes. It is true that in order to entitle the plaintiff to recover he must show he has sustained some damage In the case of *Stearns* v. *Miller*, 25 Vt., above referred to, the defendants ultimately recovered, by showing that the town omitted to collect of the town taxes, assessed on the erroneous list, as much as was equal to the sum by which the whole taxes on that list were increased by reason of the error in the list. And in this case, if the court could assume that the plaintiff would redeem, there would be plausibility in the argument, but this can not be assumed—he may never redeem, and if he should not, and the value of the premises, with the rents and profits the mortgagee receives, is equal to the debt and the taxes the mortgagee would have paid had the list been made to the mortgagee, the plaintiff would not have to pay the taxes, either directly or indirectly—to say nothing of the difference between being compelled to pay the taxes immediately to the collector, and paying them ultimately when he redeems.

But the court are of opinion that it was error to hold that as matter of law the defendants were liable for setting these parcels in the list to the mortgagor, inasmuch as the case shows that the listers had no notice of any change of possession from the mortgagor to the mortgagee. Nor can the court say as matter of law there was no want of care, or diligence. The determination of this question depends on such a variety of facts and circumstances and inferences to be drawn from the evidence, that it should be left to the jury as a question of care and diligence. The same rule applies as to the parcel foreclosed, and which

passed into the possession of the mortgagee under the foreclosure That transfer is not matter of record in the town clerk's office, and the defendants can not be affected with constructive notice of the proceedings in court and decree of foreclosure. It is true the mortgage may be of record, but that is not such a transfer as requires any change in the list, it is only the taking possession under it, or a final foreclosure, that gives the right to set it in the list of the mortgagee.

As to the Lillie place, (No. 6,) Rogers must be regarded as in possession under the lease from the plaintiff, so far as these defendants are concerned. The case states the possession to be under the lease and when the condition in the lease happened by which the plaintiff was to have the possession, the possession was surrendered up to the plaintiff, although the mortgage held by the lessee (Brockway,) or Rogers his assignee, was still due. And although this happened after this list was made, yet as the plaintiff was a party to it, it is evidence as to the character of the possession in 1857. At any rate, whatever may have been the character of the possesion, whether under the leare or under the mortgage, it was so equivocal in its character that the defendants are not liable for not setting this parcel to the mortgagee by reason of this possession—it could not be regarded as negligence to set it in the plaintiff's li-t, notwithstanding such possession was thus equivocal.

It would seem to be more reasonable for the statute to make it the duty of tax payers to present to the listers a list of their real estate, as well as of their personal property, and to give notice to the listers of all transfers by them of real estate during the preceeding year, and for mortgagors to give notice when the mortgagee takes possession, as the facts are more peculiarly within their knowledge. than to hold that the listers are to take notice of such facts at their peril. But the statute has not so provided, and the court do not feel justified in imposing such duty in the absence of any such enactment, especially as the statute requires them to give a list of personal estate, and is silent in this respect as to real estate. The case therefore must be submitted to the jury under the general principles above expressed, so far as the facts developed on a new trial may make them applicable.

Judgment reversed and new trial granted.